**LEE LITIGATION GROUP, PLLC**
C.K. Lee, Esq. (CL 4086)
Anne Seelig, Esq. (AS 3976)
148 West 24th Street, 8ᵀᴴ Floor
New York, NY 10011
Tel.: (212) 465-1188
Fax: (212) 465-1181
*Attorneys for Plaintiff, FLSA Collective Plaintiffs,*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____

YESINIA URIBE ROJO,
*on behalf of herself, FLSA Collective Plaintiffs,*
*and the Class,*                                         Case No.:

      Plaintiff,

                                 **CLASS AND COLLECTIVE**
                                 **ACTION COMPLAINT**

      v.

LAKEVIEW SECURITY & INVESTIGATIONS, INC.,
ANTHONY D'GRACIA, and
ERIC SCOTT,
                                **Jury Trial Demanded**

      Defendants.

_____

       Plaintiff YESINIA URIBE ROJO ("Plaintiff"), on behalf of herself and others similarly situated, by and through her undersigned attorneys, hereby files this Class and Collective Action Complaint against Defendants LAKEVIEW SECURITY & INVESTIGATIONS, INC. (collectively, "Corporate Defendant"), ANTHONY D'GRACIA and ERIC SCOTT ("Individual Defendants") (together with Corporate Defendant, "Defendants") and states as follows:

<u>**INTRODUCTION**</u>

      1.     Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), that she and others similarly situated are entitled to recover from Defendants: (1) unpaid overtime premiums; (2) unpaid wages, including overtime, for all hours

worked due to timeshaving; (3) liquidated damages; and (4) attorneys' fees and costs.

2.      Plaintiff further alleges, pursuant to the New York Labor Law ("NYLL"), that she and others similarly situated are entitled to recover from Defendants: (1) unpaid overtime premiums; (2) unpaid wages, including overtime, for all hours worked due to timeshaving; (3) statutory penalties; (4) liquidated damages; and (5) attorneys' fees and costs.

3.      Plaintiff individually alleges, pursuant to New York State Human Rights Law, N.Y Exec. Law §290 *et seq.* ("NYSHRL"), due to Defendants' unlawful discrimination against her on the basis of her sex and appearance, that she is entitled to recover from Defendants: (1) economic damages, (2) compensatory damages, (3) punitive damages and (4) attorney's fees and costs.

4.      Plaintiff brings additional claims on an individual basis, pursuant to New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.* ("NYCHRL") due to Defendants' unlawful discrimination against her on the basis of her sex and appearance, that she is entitled to recover from Defendants: (1) economic damages, (2) compensatory damages, (3) punitive damages, and (4) attorneys' fees and costs.

5.      Defendants operate a security and investigative firm which provides services for businesses, individuals and law offices. These services include, but are not limited to, uniformed guard services, private investigative services and special event security, as described on Defendants' website, available at https://lakeviewus.com/about-us/. *See* **Exhibit A**.

6.      Plaintiff, FLSA Collective members and Class members are all current and former employees who worked as, including but not limited to security guards, patrol drivers, and site supervisors, and other similar positions, and were victims of Defendants' underpayment of wages, including overtime, and Defendants' illegal policy of timeshaving.

7.     Plaintiff brings this wage and hour class action on behalf of themself and all persons, who during the application limitations period up to and including the present, were similarly underpaid by Defendants in violation of protections afforded under the FLSA, and the laws and regulations passed in the following states:

1) California: California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200-17210; and the California Labor Code and relevant Industrial Welfare Commission Wage Order;
2) Florida: Florida's Unpaid Wages Statute, Fla. Stat. 448.08 *et seq.*;
3) Nevada: Nevada Minimum Wage Amendment of the Nevada Constitution, Nev. Const. art. 15, § 16, and the Nev. Rev. Stat. Chapt. 60;
4) New York: New York Labor Law, Article 19 § 650 et seq., and Article 6 § 190 et seq.;
5) Texas: Texas Minimum Wage Act, Texas Labor Code § 62.001 et seq.;
6) Washington: Washington Minimum Wage Act, R.C.W. 49.46.005, *et seq.*; and Washington Minimum Wage Rules, WAC 296-126 *et seq.*;

8.     Plaintiff, FLSA Collective Plaintiffs, and Class members were all victims of Defendants' failure to pay overtime premiums and illegal time shaving policies. Defendants instituted a nationwide policy of not compensating overtime premiums for hours worked in excess of forty (40). Additionally, despite requiring employees to work after their scheduled hours and on their days off, Defendants would only compensate employees based on their schedules. Defendants' system resulted in both pre-and-post shift timeshaving.

9.     Plaintiff brings this wage and hour class action on behalf of themself and all Class members employed by Defendants nationwide, who during the applicable state and federal limitations period (the "Class Period"), were similarly underpaid by Defendants in violation of protections afforded under the FLSA and the regulations of the above states.

## <u>JURISDICTION AND VENUE</u>

10.     This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

11.     Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391 because the Plaintiff worked for Defendants in this District, and the underpayment and discrimination she faced (as outlined in this Complaint) emanated from this District.

## PARTIES

12.     Plaintiff YESINIA URIBE ROJO is a resident of Queens County, New York.

13.     Corporate Defendant LAKEVIEW SECURITY & INVESTIGATIONS, INC. is a domestic business corporation organized under the laws of the State of New York with its principal place of business and address for service of process at 5835 Route 25, Calverton, NY 11933.

14.     Individual Defendant ANTHONY D'GRACIA is an owner of Corporate Defendant. ANTHONY D'GRACIA exercises operational control as it relates to all employees including Plaintiff, FLSA Collective Plaintiffs, and the Class. ANTHONY D'GRACIA frequently visits the Company. ANTHONY D'GRACIA exercises the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiff, FLSA Collective Plaintiffs, and the Class. At all times, employees of the Defendants' company can complain to ANTHONY D'GRACIA directly regarding any of the terms of their employment, and ANTHONY D'GRACIA would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees. ANTHONY D'GRACIA exercised functional control over the business and financial operations of Corporate Defendant. ANTHONY D'GRACIA had the power and authority to supervise and control supervisors of Plaintiff, FLSA Collective Plaintiffs, and Class members, and could reprimand employees.

a. Individual Defendant ANTHONY D'GRACIA's email, adgracia@lakeview.pro is listed as the main contact on the Corporate Defendant's official website. *See* **Exhibit B**.

b. Individual Defendant ANTHONY D'GRACIA's email, adgracia@lakeview.pro is listed as a main contact for Corporate Defendant, on a list of security guard training schools approved by the New York State Division of Criminal Justice Services. *See* **Exhibit C**.

15.    Individual Defendant ERIC SCOTT is an owner of Corporate Defendant. ERIC SCOTT exercises operational control as it relates to all employees including Plaintiff, FLSA Collective Plaintiffs, and the Class. ERIC SCOTT frequently visits the Company. ERIC SCOTT exercises the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiff, FLSA Collective Plaintiffs, and the Class. At all times, employees of the Defendants' company can complain to ERIC SCOTT directly regarding any of the terms of their employment, and ERIC SCOTT would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees. ERIC SCOTT exercised functional control over the business and financial operations of Corporate Defendant. ERIC SCOTT had the power and authority to supervise and control supervisors of Plaintiff, FLSA Collective Plaintiffs, and Class members, and could reprimand employees. Individual Defendant ERIC SCOTT claims to be the owner of Lakeview Security & Investigations in a phone interview with Riverhead Local, featured in an online article titled

"Social Media Posts Showing Parties at Calverton Water Park Without C.O. Lead to Violation Notice". *See* **Exhibit D**, p. 10.

16.     At all relevant times, Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA, NYLL, and regulations thereunder.

17.     At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs, and Class members were directly essential to the business operated by Defendants.

18.     Plaintiff has fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

## NATIONWIDE FLSA COLLECTIVE ACTION ALLEGATIONS

19.     Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt employees, including, but not limited to security guards, patrol drivers, and site supervisors, among others, employed by Defendants on or after the date that is six years before the filing of this Complaint ("FLSA Collective Plaintiffs").

20.     At all relevant times, Plaintiff and FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them their proper wages, including: (i) unpaid overtime premiums; (ii) unpaid wages, including overtime, for all hours worked due to timeshaving; (iii) liquidated damages; and (iv) attorneys' fees and costs. The claims of Plaintiff stated herein are essentially the same as those of FLSA Collective Plaintiffs.

21.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective

Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

<u>**NATIONWIDE RULE 23 CLASS**</u>
<u>**ALLEGATIONS**</u>

22.    Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt employees, including, but not limited to security guards, patrol drivers, and site supervisors, among others, employed by Defendants on or after the date that is six years before the filing of this Complaint or applicable period for State wage laws (the "Class" or "Class members").

23.    All said persons, including Plaintiff, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are able to be determined from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class member are also determined from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

24.    To the extent necessary, Plaintiff will designate subclasses for each of the States where Defendants have employees.

25.    The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently within the sole control of Defendants. There is no doubt that there are more than forty Class members in the Class. The proposed Class includes a Subclass of employees employed by Defendants. This Subclass comprises of Class members employed in the States of New York,

California, and States with requirements to provide earning statements and wage notices to employees ("Wage Notice Subclass") who will have additional state law claims against Defendants. There is no doubt that this Subclasses also contains more than forty (40) members. Plaintiff is a member of the Class and the Wage Notice Subclass.

26.     Plaintiff's claims are typical of claims that could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class or in separate actions. All Class members were subject to the same corporate practices of Defendants of: (i) failing to pay wages, including overtime, due to Defendants' failure to compensate Class members' for work despite Class members working beyond their scheduled shifts, and (ii) failing to pay overtime premiums.

27.     Due to the failure to include all hours of work and outline overtime premium rates in Class members' compensation, paystubs and wage notices, Plaintiff and Wage Notice Subclass members did not receive wage notices and wage statements which accurately stated Plaintiff's and the Wage Notice Subclass' rates of pay and hours worked as required by state laws and regulations.

28.     Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

29.     Plaintiff is able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

30.     A class action is superior to other available methods for the fair and efficient

adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against a corporate defendant. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

31.    Defendants and other employers throughout the country violate their respective states' labor laws. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows

for the vindication of their rights while eliminating or reducing these risks.

32.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a)  Whether Defendants employed Plaintiff and Class members within the meaning of state and wage hour laws;

b)  What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not properly pay Plaintiff and the Class members;

c)  At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiff and Class members for their work;

d)  Whether Defendants properly notified Plaintiff and Class members of their regular hourly rates and overtime rates;

e)  Whether Defendants paid Plaintiff and the Class members the proper overtime wages at a rate that is at least one-and-one-half times the regular rate of pay for all hours worked in excess of forty each workweek;

f)  Whether Defendants failed to properly pay Plaintiff and Class members for the hours worked by Plaintiff and Class members;

g)  Whether Defendants provided proper wage notices to Plaintiff and Subclass members per requirements of State wage laws; and

h)  Whether Defendants provided proper wage statements to Plaintiff and Subclass members per requirements of State wage laws.

## STATEMENT OF FACTS

33.     From in or about December 2020, until in or about May 2, 2024, Plaintiff ROJO was employed by Defendants as a security guard. During her employment, Defendants would assign Plaintiff to provide security services for different clients at various locations in New York. FLSA Collective Plaintiffs and Class members were similarly scheduled to work at differing locations depending on Defendants' needs.

34.     Throughout her employment, Plaintiff worked for Defendants on an as-needed basis. Defendants arranged Plaintiff's work schedule, requiring Plaintiff to work anywhere

between twenty-four (24) hours to sixty (60) hours per week. FLSA Collective Plaintiffs and Class members were similarly scheduled to work differing hours each week. Below are a few examples of Plaintiff's scheduled hours:

- In or about May 23, 2022 to in or about May 29, 2022, Plaintiff was scheduled to work for fifty-five and a half (55.50) hours a week.

- In or about July 25, 2022 to in or about July 31, 2022, Plaintiff was scheduled to work for fifty-nine and a half (59.50) hours a week.

35.    Defendants provided security services to various clients through contracts. They charged clients different rates based on the job location or event's type, location, number of attendees, and security risk. Throughout her employment, Plaintiff's pay varied according to these contractual rates:

- In or about December 2020 to in or about January 2022, Plaintiff provided security services to the Rockefeller Center and was paid at a rate of thirty-five dollars ($35.00) per hour.

- In or about June 2022 to in or about July 2023, Plaintiff provided security services to multiple clients and was paid at a rate of twenty-five dollars ($25.00) per hour.

- In or about September 2023 to in or about May 2024, Plaintiff provided security services to multiple clients and was paid twenty-seven dollars ($27.00) per hour.

36.    Throughout her employment, Plaintiff was not paid the proper overtime premium of 1.5 times their regular hourly rate for hours worked over than forty hours in a workweek. Instead, Defendants paid Plaintiff and other employees at their regular hourly rates for their overtime hours. As shown by the sampling of Plaintiff's wage statements for 2022, and 2023, Plaintiff was always paid at a straight rate for all hours worked, including overtime. *See* **Exhibit**

E. For example, during the pay period from 5/23/22 – 5/29/22, Plaintiff was paid for 55.50 hours at her hourly rate of $25.00; during the pay period from 4/17/23 – 4/23/23, Plaintiff was paid for 45.50 hours at her hourly rate of $25.00. *Id.* At all times of her employment, Defendants always paid Plaintiff at a straight hourly rate despite working overtime hours. Similarly, FLSA Collective Plaintiffs, and Class members were also improperly paid for overtime hours at their regular hourly rates instead of at the proper overtime premium of 1.5 times their hourly rate.

37.     Throughout her employment with Defendants, Plaintiff would work an additional eight (8) hours a week, off-the-clock, in order to respond to calls, texts and emails regarding scheduling of herself and others, as well as answering all inquiries from management and coworkers. Plaintiff received these messages from Individual Defendants ERIC SCOTT and ANTHONY D'GRACIA, and any guards that would require additional information. Even on her days off, Plaintiff was instructed to promptly respond to supervisors and other guards. Specifically, Individual Defendant ANTHONY D'GRACIA mandated Plaintiff to respond to him and any other employee "at any given time". Individual Defendant ANTHONY D'GRACIA threatened to terminate her employment when Plaintiff failed to respond to his communications after her scheduled shift. Therefore, Plaintiff was required to always make herself available to communications. Plaintiff was timeshaved a total of eight (8) hours per week for the Defendants' failure to compensate off-the-clock work. All FLSA Collective Plaintiffs and Class members were subject to this unpaid off-the-clock work and suffered similar unpaid time.

**_Plaintiff's and Subclass Members' Claims for Improper Wage Notices and Earning Statements:_**

38.     Plaintiff and Subclass members never received proper wage notices from Defendants. They also did not receive accurate wage statements from Defendants. 41 of 50 States require paystubs with accurate information as to employees work hours and rates of pay. These

States include the following States where Defendants has employees and provided security services: California, New York, Washington.

39.     Defendants further violated the WTPA and California Labor Code 226 LC by failing to provide Plaintiff and New York, California and Washington Subclass members with accurate wage statements, because wage statements that do not reflect the actual number of hours worked by the employee do not satisfy the requirements of the WTPA and California Labor Code 226 LC. *See Shi Yong Li v. 6688 Corp.*, 2013 U.S. Dist. LEXIS 148020, *6 (S.D.N.Y. Sept. 27, 2013) ("The wage statements provided failed to accurately indicate the amount of time *actually* worked by tipped employees") (emphasis added); *Copper v. Cavalry Staffing, LLC*, 132 F. Supp. 3d 460, 468 (E.D.N.Y. 2015) (holding that "the 'number of overtime hours' that appears on the wage statement should include every hour *actually* 'worked' by the employee") (emphasis added); *Campos v. Bkuk 3 Corp.*, 2021 U.S. Dist. LEXIS 151528, *30 (S.D.N.Y. Aug. 10, 2021) ("Thus, when paystubs were received, they were not accurate insofar as they did not accurately reflect the hours *actually* worked") (emphasis added).

40.     In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the legislatures of New York, California and Washington. As one Court observed:

> Here, Plaintiffs allege that Defendants failed to furnish them with proper wage notices and statements, as required by NYLL §§ 195(1) and 195(3). These provisions were enacted as part of New York's Wage Theft Prevention Act ("WTPA"), N.Y. Lab. Law § 195, which sought "to expand the rights of employees to seek civil and criminal avenues of remedy for their employers failing to follow labor law appropriately and the specifications therein." N.Y. Spons. Mem., 2010 S.B. 8380. More specifically, the New York State Assembly passed the WTPA to address studies showing that a large number of employees were not being paid the wages owed to them, and that many employers were not adequately informing their employees of their wages and how they are calculated in language the employees could understand. *Id.* The New York State Assembly opined that existing penalties did not adequately deter employers from paying less than the wages owed,

and stated that the WTPA would dramatically change this by increasing penalties for violating employees' rights. *Id.*

*Imbarrato v. Banta Mgmt. Servs.*, 2020 U.S. Dist. LEXIS 49740, *21-22 (S.D.N.Y. March 20, 2020)

41.    Here, Defendants' failure goes beyond generating a risk of harm to Plaintiff and Subclass members. Defendants' conduct actually harmed Plaintiff and Subclass members. Defendants' failure to provide wage notices and paystubs listing all hours actually worked and rates of pay, including overtime hours and overtime rates, deprived employees of the ability to contest the pay provided by Defendants, allowed Defendants to hide their wrong-doing, and necessitated the current litigation to vindicate Plaintiff's and Subclass members' rights. This conduct ensured Defendants' ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law. Defendants' failure to provide wage notices and wage statements to employees allowed Defendants to hide their responsibility and deprive employees of timely compensation.

42.    Had the wage statements Defendants provided to Plaintiff and Subclass members accurately listed the total number of hours Plaintiff and Subclass members actually worked, as required by law, Defendants would have had to either (a) increase the wages to correspond to the hours actually worked or (b) forthrightly acknowledge, by way of the wage statement, that the employee's wages did *not* correspond to the hours the employee actually worked. Either possibility would have allowed Plaintiff and Subclass members to vindicate their rights under their respective State wage laws. The deprivation of these possibilities therefore constitutes an injury.

43.    The failure to provide proper wage notices and wage statements continues to result in delayed payment of all proper wages owed to Plaintiff and Subclass members. This delayed payment caused Plaintiff and Subclass members to struggle to pay bills and other debts.

44.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices and wage statements as required by State wage laws, including NYLL, California Labor Code 226 LC and Washington Minimum Wage Act.

45.     The direct effect of understating the number of hours an employee worked is to reduce the wages that employees are listed as having earned on their wage statements. The direct effect of this, in turn, is to reduce the employee earnings that the employer later reports to the IRS through the employee's W-2 form, as such information is derived from the information on employees' wage statements. See *Mills v. Mills*, 2021 Minn. Dist. LEXIS 200, *5 (Minn. Dist. Ct., Anoka County, Tenth Judicial District May 20, 2021) ("Petitioner's gross annual income, based on her 2020 W-2 and paystub dated 12/24/20, is $130,321.30"); *T.F. v. N.F.*, 820 N.Y.S.2d 846, 846 (Sup. Ct., Suffolk Cty., June 22, 2006) ("In 2005 the plaintiff earned $ 133,086 as reflected on his final year paystub and W-2").[1]

46.     The effect of reporting reduced wages on an employee's W-2 is, in turn, to reduce the amount of social security benefits available to the employee, as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. *See McGauran v. Soc. Sec. Comm'n*, 2001 U.S. Dist. LEXIS 3187, *7 (N.D. Cal. March 19, 2001) ("Social security benefits are based upon the worker's earnings as reported to the [SSA] . . . [and] the worker's earnings are used to determine insured status for entitlement to retirement

---

[1] It is true that the wages reported on W-2 forms are not always precisely identical to those listed on an employees' last paystub for the year. One reason for is, as the IRS explains, that "W-2 wages include: (i) the total amount of wages as defined in section 3401(a); (ii) the total amount of elective deferrals (within the meaning of section 402(g)(3)); (iii) the compensation deferred under section 457; and (iv) the amount of designated Roth contributions (as defined in section 402A)." https://www.irs.gov/pub/irs-drop/rp-19-11.pdf. However, the possibility, that wages listed on a W-2 might be affected by such considerations does not change the fact that the base wages on the W-2 are derived from paystubs. The paystub processing service *realcheckstubs* explains: "A pay stub contains crucial information that assists in calculating W2 wages. Paystub provides gross wages, deductions, taxes withheld, and other income-related data. Individuals gather the necessary figures required for accurate W2 calculation by referring to the pay stub." https://www.realcheckstubs.com/blog/paystubs/6-steps-how-to-calculate-w-2-wages-from-paystub.

and to calculate cash benefit rates." (quoting Social Security Administration, Handbook § 1400 (1997)); *Coward v. Zurich Am. Ins. Co.*, 2011 U.S. Dist. LEXIS 74543, *3 (N.D. Ill. July 8, 2011) ("Under the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year.'") (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

47.    "In the wake of the Supreme Court's decision in *TransUnion*, courts in this Circuit have held that plaintiffs lack standing to bring wage notice and statement claims under the NYLL absent any concrete, downstream consequences of the recordkeeping violation." *Chen v. Lilis 200 W. 57th Corp.*, No, 2023 U.S. Dist. LEXIS 38163, at *18, 2023 WL 2388728, at *8 (S.D.N.Y. Mar. 7, 2023). "On the other hand, 'allegations' that go 'beyond asserting a bare statutory violation and sufficiently allege concrete harm' resulting from 'the underpayment of wages' pass muster because 'monetary injury is a concrete harm sufficient for purposes of Article III standing.'" *Thompson v. Elev8 Ctr. N.Y.*, LLC, 2023 U.S. Dist. LEXIS 122504, *21 (S.D.N.Y. July 17, 2023) (quoting *Mateer v. Peloton Interactive, Inc.*, 2022 U.S. Dist. LEXIS 125017, at *4 (S.D.N.Y. July 14, 2022)).

48.    Here, it is clear that Defendants' failure to provide Plaintiff and Subclass members with accurate wage statements entailed "concrete, downstream consequences" involving monetary injury. Had the number of hours been accurately reported for a given pay period, Defendants' automatic payroll system would have correspondingly increased the wages due for that period, which in turn would have been reflected in the W-2s that Defendants submitted to the IRS on behalf of Plaintiff and Subclass members. That, in turn, would have increased Plaintiff's and Subclass members' entitlement to social security benefits. Because the inaccuracy prevented this outcome, it constitutes an injury sufficient to provide Plaintiff with Article III standing.

49.    Courts agree that the misreporting of wages constitutes a concrete injury

cognizable under Article III:

> The Seventh Circuit in *Calderon* squarely addressed FICA standing. The plaintiffs in *Calderon* were former employees alleging the employer failed to pay their FICA taxes. 999 F.2d at 1105-06. The Seventh Circuit found that the plaintiffs lacked standing to compel the employer to pay their FICA taxes because "[b]enefits do not. . . depend on whether the employer actually paid the taxes." *Id*. at 1106. Plaintiffs could, however, enforce FICA's reporting requirement because it is the reporting of income that triggers benefits, and losing benefits is an injury under *Lujan*. *Id*. Whether the employer in *Calderon* made FICA payments on the plaintiffs' behalf had no bearing on the plaintiffs' entitlement to benefits. *Id*. "[T]he plaintiff's real interest lies in ensuring that the [employer] make the proper reports of their income." *Id*.

*Coward*, 2011 U.S. Dist. LEXIS 74543, at *3-4.

50. The case at bar is somewhat different from *Coward* inasmuch as Defendants actually underpaid Plaintiff and other employees rather than merely misreporting their income. But this distinction has no bearing on the question of Article III standing, since it is still the case that "it is the reporting of income that triggers benefits, and losing benefits is an injury." *Id*. Plaintiff and Subclass members lost benefits by virtue of how Defendants reported their income, and how Defendants reported employees' income was the direct outcome of the inaccuracies in employees' wage statements. That is why "Plaintiffs have standing to enforce the statutory reporting requirements" imposed by the WTPA. *Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993).

51. Whether or not any Subclass members are presently eligible for social security benefits is legally immaterial. *See id*. ("Although only citizens and aliens residing in the United States may receive benefits, 42 U.S.C. § 402(t), plaintiffs may eventually fulfill this requirement and therefore are entitled to keep their Social Security accounts accurate.").

52. The *Calderon* court stressed that an employee's interest in ensuring that an employer properly report the employee's income is amplified by the difficulty of persuading the government to correct errors:

The practical difficulty is that eligibility for Social Security benefits presumptively depends on reports that employers send to the government. A worker who seeks credit for unreported income bears the burden of proof, 42 U.S.C. § 405(c)(3), (4), which will be hard to carry if the employer has not furnished the customary documentation. The government believes employers who report earnings, because these reports are costly to make--they entail paying a substantial tax. The government tends not to believe undocumented claims by employees, because these claims are essentially costless yet could establish entitlement to large pensions or disability benefits.

All of this means that the plaintiffs' real interest lies in ensuring that the Witvoets make the proper reports of their income.

*Calderon,* 999 F.2d 1101 at 1106.

53.     Here, the problem is not merely challenging but insurmountable. Plaintiff and Subclass members cannot even attempt to have their earnings report corrected because Defendants *did* report what they actually paid Plaintiff and Subclass members. The problem, rather, is that Plaintiff and Subclass members were underpaid. Yet the ultimate effect is the same—reduced social security eligibility. Because "[u]nder the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year,'" Plaintiff was irreversibly injured with respect to her social security benefits as soon as Defendants sent her W-2 to the IRS. *Coward*, 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

54.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices, at the beginning of employment and annually thereafter, pursuant to the requirements of NYLL and other state wage laws.

55.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices and statements as required by NYLL and other state wage laws.

56.     In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that clearly entails a concrete risk of harm to an interest identified by the legislatures of New York, Washington and California. Defendants' failure to provide such

notices trivializes the importance of these notices in protecting Plaintiff's interest in ensuring proper pay. Despite Defendants' conduct, there is a reason why the State legislature concluded that enacting wage notice provisions would "far better protect workers' rights and interests" than existing penalties. *See* N.Y. Spons. Mem., 2010 S.B. 8380. Written notices function as a means of apprising employees of their rights and of their employer's obligations towards them, empowering employees to advocate for themselves. Deprivation of such notices necessarily entails a significant risk of harm to the employees' concrete interest in being paid properly and timely.

57.    Here, Defendants' failure goes beyond generating a risk of harm to Plaintiff and Subclass members. Defendants' conduct actually harmed Plaintiff and Subclass members. Defendants' failure to provide paystubs listing all hours and rates of pay, including overtime hours and overtime rates and the failure to provide a wage notice properly listing the rate and frequency Plaintiff and Subclass members were entitled to get paid, deprived employees of the ability to contest Defendants' calculations, allowed Defendants to hide their wrong-doing, and necessitated the current litigation to vindicate Plaintiff and Subclass members' rights.  This conduct ensured Defendants' ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law.  Moreover, Defendants' failure to provide wage notices allowed Defendants to hide the proper frequency of pay to employees.  Defendants' failure to provide a wage notice to employees allowed Defendants to hide their responsibility and deprive employees of timely compensation.

58.    Due to Defendants' failure to provide legally mandated notices such as earning statements and wage notices, Defendants were able to hide their wrongdoings from employees, and continue to attempt to hide their wrongdoings necessitating the current litigation.  The failure to provide notices continues to result in delayed payment of all proper wages owed to Plaintiff and

Subclass members.  This delayed payment caused Plaintiff and Subclass members to struggle to timely pay bills and delay or forgo purchases.

59.     Defendants knowingly and willfully operated their business with a policy of not properly compensating either FLSA overtime rate (of time and one-half) or the State wages and overtime (of time and one-half) to Plaintiff, FLSA Collective Plaintiffs, and Class members.

60.     Defendants knowingly and willfully subjected Plaintiff, FLSA Collective Plaintiffs, and Class members to time shaving of hours worked, including overtime, in violation of the FLSA and the State wage laws.

61.     Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs, and the Class, in this litigation and has agreed to pay the firm a reasonable fee for its services.

### *Plaintiff's Individual Sexual and Weight Discrimination Claims*

62.     Plaintiff is female.

63.     Throughout her employment, Plaintiff suffered at the hands of Defendants due to discrimination arising from Plaintiff's sex and weight. As a result, Plaintiff faced a loss of wages and emotional distress as an outcome of constant hostility she was subject to at Defendants' place of employment.

64.     Plaintiff was subject to differential treatment from Defendants. Plaintiff began her employment with Defendants as a security guard in December 2020, at varying rates. Apart from her security service assignment at Rockefeller Centre, in which she was paid at a rate of thirty-five dollars ($35.00) an hour, Plaintiff was mostly paid in between twenty-five dollars ($25.00) and twenty-seven dollars ($27.00) an hour. In contradiction, Plaintiff routinely observed

Defendants assigning her coworkers to clients and job sites that paid security guards forty dollars ($40) an hour.

65.    Plaintiff urged her managers and supervisors of Defendants for an assignment to a higher-paying site. Plaintiff personally made requests to Individual Defendant ANTHONY D'GARCIA for an assignment to a higher paying job site. In 2024, to another of Plaintiff's requests to transfer, Individual Defendant ANTHONY D'GARCIA remarked: "they don't want fat, short females." Defendants turned a blind eye to Plaintiff's pleas in a callous and disregardful manner.

66.    Defendants cruelly and prejudicially fostered a hostile work environment that caused deep discomfort to Plaintiff. Due to this practice, Plaintiff suffered physical discomfort and emotional humiliation while working for Defendants.

67.    Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs and Class members.

## STATEMENT OF CLAIM

## COUNT I

## NATIONWIDE VIOLATION OF THE FAIR LABOR STANDARDS ACT

68.    Plaintiff realleges and incorporates all the above allegations as if fully set forth herein.

69.    At all relevant times, Defendants were and continue to be an employer engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

70.    At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

71.    At all relevant times, Defendants had gross annual revenues in excess of $500,000.

72.    At all relevant times, Defendants had a policy and practice of failing to pay Plaintiff and FLSA Collective Plaintiffs their overtime premiums for hours worked over forty, because employees were paid at a straight rate regardless of hours worked.

73.    At all relevant times, Defendants had a policy and practice of failing to pay Plaintiff and FLSA Collective Plaintiffs their wages, including overtime, due to a policy of timeshaving.

74.    Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of the Court to amend this Complaint to set forth the precise amount due.

75.    Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs for all hours worked, including overtime hours, when Defendants knew or should have known such was due.

76.    Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

77.    As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

78.    Due to the intentional, willful and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid overtime premiums; unpaid wages, including overtime, due to timeshaving; plus an equal amount as

liquidated damages.

79.     Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

**COUNT II**

**<u>VIOLATION OF THE NEW YORK LABOR LAW</u>**

80.     Plaintiff realleges and incorporates all the above allegations as if fully set forth herein.

81.     At all relevant times, Plaintiff and New York Class members were employed by Defendants within the meaning of the NYLL §§ 2 and 651.

82.     Defendants knowingly and willfully failed to pay Plaintiff and New York Class members their overtime premiums for hours worked over forty, because employees were paid at a straight rate regardless of hours worked.

83.     Defendants knowingly and willfully failed to pay Plaintiff and New York Class members the full amount of regular and overtime wages as a result of impermissible rounding.

84.     Defendants willfully violated Plaintiff's and New York Class members' rights by failing to pay them all their wages within seven days of the end of the week in which they were earned, in violation of NYLL § 191(1)(a)(i).

85.     Defendants knowingly and willfully operated their business with a policy of not providing Plaintiff and New York Class members wage notice, at date of hiring and annually thereafter, as required under NYLL.

86.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements, as required under NYLL.

87.     Due to the Defendants' NYLL violations, Plaintiff and New York Class members are entitled to recover from Defendants unpaid overtime premiums; unpaid wages, including

overtime, due to timeshaving; reasonable attorneys' fees; liquidated damages; statutory penalties and costs and disbursements of the action, pursuant to the NYLL.

**COUNT III**

**<u>VIOLATION OF APPLICABLE STATE WAGE AND HOUR LAWS</u>**

**(brought on behalf of a Rule 23 Class)**

88.     Plaintiff realleges and incorporates all the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

89.     At all relevant times, Class members were employed by Defendants within the meaning of the applicable state wage and hour laws, just as Plaintiff was employed by Defendants under the meaning of the FLSA.

90.     Plaintiff can represent the Class because the requirements of the FLSA and the requirements of the state labor laws enumerated earlier are identical for purposes of her overtime class claims.

91.     Defendants knowingly and willfully violated Plaintiff's and Class members' rights by failing to pay them the proper overtime compensation at rates of not less than one and one-half times the regular rate of pay for each hour worked in excess of forty (40) hours in a workweek due a policy of underreporting employees' hours, in violation of the state wage and labor laws outlined above.

92.     Defendants knowingly and willfully failed to provide proper wage statements and notices to Subclass members, as required under the laws of New York State and California.

93.     Due to Defendants' state law violations, Plaintiff and Class members are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payments, statutory penalties, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action.

94.     In addition to violations of State Labor overtime laws under which Plaintiff brings

class (not individual) claims, Defendants violated State provisions requiring employers to pay

employees all wages owed.  Since overtime wages are owed under the FLSA, these laws

encompass class members' claims just as much as would explicit overtime requirements.  These

state law provisions include the following:

Upon prevailing in an action brought pursuant to this section, aggrieved persons
shall recover the full amount of any unpaid back wages unlawfully withheld plus the same
amount as liquidated damages and shall be awarded reasonable attorney's fees and costs.

Florida Minimum Wage Act, Fla. Stat. § 448.110(6)(c)(1)

95.     The Florida Minimum Wage Act has a pre-suit notice requirement. Fla. Stat. §

448.110(6)(a).  However, Plaintiff invokes the Florida Minimum Wage Act not only in his

individual capacity but to bring class claims on behalf of class members residing in Florida. Thus,

Plaintiff is not personally required to provide Defendants with a pre-suit notice as to each class

member.  As to these absent Florida class members, courts in Florida have "found no authority

mandating that a detailed pre-suit notice for each and every putative class member be served on

[d]efendants under § 448.110(6) prior to the filing of a putative class action under the FMWA."

*Griffith v. Landry's, Inc*., 2016 U.S. Dist. LEXIS 196397, *12 (M.D. Fla. May 17, 2016).

96.     Some states' wage and hour or wage payment statutes may prescribe means other

than class actions for pursuing common claims.  Any state restrictions on class actions are

irrelevant, however, as this case was filed in federal court, where the Federal Rules of Civil

Procedure hold. See *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co*., 559 U.S. 393, 400,

130 S. Ct. 1431, 1438 (2010) (F.R.C.P. 23 authorizes "class actions across the board"

notwithstanding state law restrictions on class actions); *Dremak v. Iovate Health Scis. Grp., Inc.*

*(In re Hydroxycut Mktg. & Sales Practices Litig.)*, 299 F.R.D. 648, 654 (S.D. Cal. 2014)

("[A]pplication of Rule 23 to Plaintiffs' [FBPA] claims does not run afoul of the Rules Enabling Act. Rule 23 governs Plaintiffs' claims, and Plaintiffs' claims are not subject to dismissal based on the state statutes prohibiting class actions.").

97.    Due to Defendants' state law violations, Plaintiff and Class Members are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payments, statutory penalties, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action.

## COUNT IV

## VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW

98.    Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

99.    The New York State Human Rights Law ("NYSHRL") prohibits discrimination in the terms, conditions, and privileges of employment, and the retaliation thereof, on the basis of weight and sex.

100.    Plaintiff was an employee and qualified person within the meaning of the NYSHRL and Defendants are covered employers under the NYSHRL.

101.    Defendants operated a business that discriminated against Plaintiff in violation of Section 296(1)(a) with respect to the terms, conditions, and privileges of her employment because of her weight and sex, in ways including, but not limited to:

    a.    Creating and fostering a hostile work environment based on weight and sex, and;

    b.    Verbally offending Plaintiff through usage of derogation directed at her weight and sex.

102.    Defendants' conduct was intentional, malicious, and in reckless disregard of Plaintiff's protected rights under Section 296 of the NYSHRL.

103.    As a result of Defendants' unlawful discriminatory practices, Plaintiff sustained injury, including economic damages and past and future physical and emotional distress.

104.    Due to Defendants' violations under the NYSHRL, based on discrimination, Plaintiff is entitled to recover from Defendants: (1) back pay; (2) compensatory damages; (3) punitive damages; and (4) attorney's fees and costs.

105.    As a direct and proximate result of said hostile work environment, Plaintiff suffered and continues to suffer actual damages in various ways, including but without limitation, loss of past earnings, mental anguish, and pain and suffering. Plaintiff seeks judgment in an amount to be determined at trial for these damages as well as an award of punitive damages, interest, attorney's fees, and costs, as provided for under the NYSHRL.

**COUNT V**

**VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW,**

**ADMINISTRATIVE CODE OF THE CITY OF NEW YORK § 8-107 ("NYCHRL")**

106.    Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

107.    At all relevant times, Plaintiff was an employee within the meaning of the NYCHRL and Defendants are covered employers under the NYCHRL.

108.    Defendants operated a business that discriminated against Plaintiff in violation of the NYCHRL by discriminating against Plaintiff with respect to the terms, conditions, and privileges of her employment because of her weight and sex in various ways, including but not limited to:

a.  Creating and fostering a hostile work environment based on Plaintiff's weight and sex, and;

b.  Verbally offending Plaintiff through usage of derogation against her weight and sex.

109.  Defendants' conduct was intentional, malicious, and in reckless disregard of Plaintiff's protected rights under the NYCHRL.

110.  As a result of Defendants' unlawful discriminatory practices, Plaintiff sustained injury, including economic damages, past wages, physical and emotional distress.

111.  Due to Defendants' violations under the NYCHRL, based on discrimination, Plaintiff is entitled to recover from Defendants: (1) back pay; (2) compensatory damages; (3) punitive damages; and (4) attorney's fees and costs.

112.  Additionally, Defendants violated the NYCHRL by creating and maintaining a hostile work environment. This hostile work environment was created and fostered through pervasive and regular discrimination in the form of comments and behavior directed towards Plaintiff.

113.  The hostile work environment was sufficiently severe and pervasive to unreasonably interfere with Plaintiff's employment and/or create an intimidating, hostile, and offensive work environment for Plaintiff.

114.  As a direct and proximate result of said hostile work environment, Plaintiff suffered and continues to suffer actual damages in various ways, including but without limitation, loss of past and future earnings, mental anguish, and pain and suffering. Plaintiff seeks judgment in an amount to be determined at trial for these damages as well as an award of punitive damages, interest, attorney's fees, and costs, as provided for under the NYCHRL.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself, FLSA Collective Plaintiffs, and Class members, respectfully requests that this Court grant the following relief:

a.  A declaratory judgment that the practices complained of herein are unlawful under the FLSA and State wage laws;

b.  An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.  An award of unpaid overtime premiums due under the FLSA and State wage laws;

d.  An award of unpaid wages, including overtime, due to Defendants' policies of impermissible timeshaving under the FLSA and State wage laws;

e.  An award of liquidated damages as a result of Defendants' willful failure to pay wages pursuant to the FLSA;

f.  An award of liquidated damages as a result of Defendants' willful failure to pay wages, pursuant to State wage laws;

g.  An award of pre-judgment and post-judgment interests, costs and expenses of this action together with reasonable attorneys' and expert fees;

h.  An award of backpay, compensatory damages, and punitive damages due under the NYSHRL;

i.  An award of backpay, compensatory damages, and punitive damages due under the NYCHRL;

j.  An award of statutory penalties for the Subclass;

k.  Designation of Plaintiff as the Representative of the FLSA Collective Plaintiffs;

l.  Designation of this action as a class action pursuant to F.R.C.P. 23;

m.  Designation of Plaintiff as Representative of the Class;

n.  Designation of Plaintiff as Representative of the Subclass; and

o.  Such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: July 29, 2024                   Respectfully submitted,

**LEE LITIGATION GROUP, PLLC**

By:    /s/ C.K. Lee
C.K. Lee, Esq. (CL 4086)
Anne Seelig, Esq. (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: (212) 465-1188
Fax: (212) 465-1181
*Attorneys for Plaintiff, FLSA Collective Plaintiffs and the Class*