UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

YESINIA URIB ROJO,

        Plaintiff,

v.

LAKEVIEW SECURITY & INVESTIGATIONS, INC., ANTHONY D'GRACIA, and ERIC SCOTT,

        Defendants.

Case No.: 1:24-cv-05729

**AFFIRMATION OF C.K. LEE, ESQ.**

---

I, C.K Lee, depose and state as follows:

1. Lee Litigation Group, PLLC represents YESINIA URIB ROJO ("Plaintiff") in this matter.

2. This Court has subject matter jurisdiction over the action and has personal jurisdiction over Defendants. *See* Plaintiffs' Complaint, ¶¶ 10-11 (Dkt. No. 1), attached hereto as **Exhibit A**.

3. On July 29, 2024, the undersigned, on Plaintiff's behalf, filed a Complaint for unpaid wages and other relief pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et. seq.* ("FLSA"), the New York Labor Law ("NYLL"), the New York State Human Rights Law, N.Y Exec. Law §290 *et seq.* ("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code§ 8-101 *et seq.* ("NYCHRL"). (Dkt. No. 1).

4. On August 28, 2024, two attorneys representing Defendants LAKEVIEW SECURITY & INVESTIGATIONS, INC., ANTHONY D'GRACIA, and ERIC SCOTT (Keith J. Frank, Esq. and Alexander Leong, Esq. of Forchelli Deegan Terrana LLP) filed two notices of appearance on the docket (Dkt. Nos. 15-16).

5. On February 11, 2025, Forchelli Deegan Terrana LLP filed their request to be relieved as counsel for Defendants due to irreconcilable differences and non-payment of legal fees (Dkt. Nos. 50-51). On March 10, 2025, the Court granted the request (Dkt. No. 58).

6. On May 15, 2025, the Court Ordered Defendants LAKEVIEW SECURITY & INVESTIGATIONS, INC., ANTHONY D'GRACIA, and ERIC SCOTT to have new counsel appear on the docket by June 13, 2025 (Dkt. No. 63) (*see* **Exhibit B**).

7. On May 15, 2025, the Clerk of Court entered a note on the docket stating that the Court effectuated service of the Court's May 15, 2025 Order on Defendants by mail.

8. On June 16, 2025, the Court recognized that Defendants failed to comply with the Court's May 15, 2025 Order, and Ordered Plaintiff to request default certification and move against Defendants for default judgment (Dkt. No. 66) (*see* **Exhibit C**).

9. On June 18, 2025, Plaintiff submitted a Request for Clerk's Certificate of Default (Dkt. No. 68), and Affirmation in Support (Dkt. No. 69).

10. On June 20, 2025, a Clerk's Certificate of Default as to Defendants LAKEVIEW SECURITY & INVESTIGATIONS, INC., ANTHONY D'GRACIA, and ERIC SCOTT was issued (Dkt. No. 70), attached hereto as **Exhibit D**.

11. On July 3, 2025, I caused an investigation into the military service status of Individual Defendants ANTHONY D'GRACIA and ERIC SCOTT ("Individual Defendants"), pursuant to the Servicemembers Civil Relief Act, 50a U.S.C. § 521. First, my firm used TransUnion's TLO service (https://tloxp.tlo.com/) to identify the Individual Defendants and discover their dates of birth and social security numbers. We then used this information to request the Individual Defendants' military service status from the

official Servicemembers Civil Relief Act website (https://scra.dmdc.osd.mil/scra/). According to the report provided by the Department of Defense, both of the Individual Defendants had not actively served in any branch of the military (including Army, Navy, Marine Corps, Air Force, Space Force, NOAA, Public Health, and Coast Guard) between July 1, 2024 and July 3, 2025. *See* **Exhibit E.** Accordingly, each of the Individual Defendants was not in active military service at any time between Plaintiff's filing of the Complaint and the Clerk entering default against the Individual Defendants.

12. From in or about December 2020, until on or about May 2, 2024, Plaintiff ROJO was employed by Defendants as a security guard. During her employment, Defendants would assign Plaintiff to provide security services for different clients at various locations in New York. **Exhibit A**, ¶ 33.

13. Throughout her employment, Plaintiff worked for Defendants on an as-needed basis. Defendants arranged Plaintiff's work schedule, requiring Plaintiff to work anywhere between twenty-four (24) hours to sixty (60) hours per week. Below are a few examples of Plaintiffs scheduled hours:

    - In or about May 23, 2022 to in or about May 29, 2022, Plaintiff was scheduled to work for fifty-five and a half (55.50) hours a week.
    - In or about July 25, 2022 to in or about July 31, 2022, Plaintiff was scheduled to work for fifty-nine and a half (59.50) hours a week.

    *Id.,* ¶ 34.

14. Defendants provided security services to various clients through contracts. They charged clients different rates based on the job location or event's type, location,

number of attendees, and security risk. Throughout her employment, Plaintiffs pay varied according to these contractual rates:

- In or about December 2020 to in or about January 2022, Plaintiff provided security services to the Rockefeller Center and was paid at a rate of thirty-five dollars ($35.00) per hour.

- In or about June 2022 to in or about July 2023, Plaintiff provided security services to multiple clients and was paid at a rate of twenty-five dollars ($25.00) per hour.

- In or about September 2023 to in or about May 2024, Plaintiff provided security services to multiple clients and was paid twenty-seven dollars ($27.00) per hour.

*Id.,* ¶ 35.

15. Throughout her employment, Plaintiff was not paid the proper overtime premium of 1.5 times her regular hourly rate for hours worked over forty hours in a workweek. Instead, Defendants paid Plaintiff and other employees at their regular hourly rates for their overtime hours. As shown by the sampling of Plaintiff's wage statements for 2022, and 2023, Plaintiff was always paid at a straight-time rate for all hours worked, including overtime (*see* **Exhibit E to the Complaint)**. For example, during the pay period from 5/23/22- 5/29/22, Plaintiff was paid for 55.50 hours at her hourly rate of $25.00; during the pay period from 4/17/23 - 4/23/23, Plaintiff was paid for 45.50 hours at her hourly rate of $25.00 (*Id*). At all times during her employment, Defendants always paid Plaintiff at a straight-time hourly rate, despite Plaintiff working overtime hours. *Id.,* ¶ 36.

16. Throughout her employment with Defendants, Plaintiff would work an additional eight (8) hours a week, off-the-clock, in order to respond to calls, texts and emails regarding scheduling of herself and others, as well as answering all inquiries from Plaintiff's management and co-workers. Plaintiff received these messages from Individual Defendants ERIC SCOTT and ANTHONY D'GRACIA, and any guards that would require information from Plaintiff. Even on Plaintiff's days off, Plaintiff was instructed to promptly respond to supervisors and other guards. Specifically, Individual Defendant ANTHONY D'GRACIA mandated Plaintiff to respond to him and any other employee "at any given time." Individual Defendant ANTHONY D'GRACIA threatened to terminate her employment when Plaintiff failed to respond to his communications after her scheduled shift. Therefore, Plaintiff was required to always make herself available to communications. Plaintiff was timeshaved a total of eight (8) hours per week for the Defendants' failure to compensate off-the-clock work. *Id.,* ¶ 37.

17. Plaintiff never received proper wage notices from Defendants. Plaintiff also never received accurate wage statements from Defendants. *Id.,* ¶ 38.

18. Defendants' failure to provide proper and accurate wage notices and wage statements to Plaintiff caused actual harm to Plaintiff. *Id.,* ¶¶ 39-58.

19. Throughout Plaintiff's employment, Plaintiff, a female, suffered from Defendants' discriminatory conduct arising from Plaintiff's sex and weight. As a result, Plaintiff faced a loss of wages and suffered emotional distress as an outcome of the constant hostility she was subjected to at Defendants' place of employment. *Id.,* ¶¶ 62-63.

20. Plaintiff was subjected to differential treatment from Defendants. Plaintiff began her employment with Defendants as a security guard in December 2020, at varying rates.

Apart from her security service assignment at Rockefeller Center, in which she was paid at a rate of thirty-five dollars ($35.00) an hour, Plaintiff was mostly paid between twenty-five dollars ($25.00) and twenty-seven dollars ($27.00) an hour. In contradiction, Plaintiff routinely observed Defendants assigning her male co-workers, including employees with less tenure than Plaintiff, to clients and job sites that paid security guards forty dollars ($40) an hour. *Id.,* ¶ 64.

21. Plaintiff made numerous requests to her managers and supervisors of Defendants to be assigned to a higher-paying site. Plaintiff made multiple requests directly to Individual Defendant ANTHONY D'GRACIA to be assigned to higher paying job sites. Sometime in 2024, Plaintiff made another request to Individual Defendant ANTHONY D'GRACIA for a transfer, to which Mr. D'GRACIA told Plaintiff that those job sites "don't want fat, short females." *Id.,* ¶ 65.

22. Defendants cruelly and prejudicially fostered a hostile work environment that caused deep discomfort to Plaintiff. Due to this practice, Plaintiff suffered physical discomfort and emotional humiliation while working for Defendants. *Id.,* ¶ 66.

23. At all relevant times, Defendants were and continue to be an employer engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). *Id.,* ¶ 69.

24. At all relevant times, Defendants had gross annual revenues in excess of $500,000. *Id.,* ¶ 71.

25. Plaintiff is entitled to recovery of **$491,254.86** in damages from Defendants (based on her hours worked, compensation paid by Defendants, and employment period) as follows:

| | |
|---|---:|
| Unpaid Overtime Premiums | $19,390.86 |
| Unpaid Overtime Wages due to Timeshaving | $58,172.57 |
| Liquidated Damages for Unpaid Wages and Premiums | $77,563.43 |
| Statutory Penalties for WTPA Violations | $10,000.00 |
| Discrimination Damages and Back Wages | $326,128.00 |
| **PLAINTIFF'S TOTAL DAMAGES** | **$491,254.86** |

Plaintiff's damage calculations are attached hereto as **Exhibit F**.

Plaintiff's damages were calculated according to Plaintiff's allegations in Complaint ¶¶ 33-66.

For the avoidance of doubt, Plaintiff is not seeking recovery of attorneys' fees or costs.

26. No inquest is necessary because Plaintiff's reasonable approximations of her hours worked is the best evidence available here as Defendants have intentionally neglected to proceed with the case. Such approximation of hours worked by an employee is acceptable when there are no time records available. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946); *Reich v. Southern New England Telecom. Corp.*, 121 F.3d 58 (2d Cir. 1997).

Dated: July 14, 2025　　　　　　　　By:　　*/s/ C.K. Lee, Esq.*
　　　　New York, New York　　　　　　　　　　C.K. Lee (CL 4086)

　　　　　　　　　　　　　　　　　　　　　　**LEE LITIGATION GROUP, PLLC**
　　　　　　　　　　　　　　　　　　　　　　148 West 24th Street, 8th Floor
　　　　　　　　　　　　　　　　　　　　　　New York, NY 10011
　　　　　　　　　　　　　　　　　　　　　　Tel: (212) 661-1008
　　　　　　　　　　　　　　　　　　　　　　Fax: (212) 465-1181
　　　　　　　　　　　　　　　　　　　　　　Email: cklee@leelitigation.com

　　　　　　　　　　　　　　　　　　　　　　*Attorney for Plaintiff*