UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

YESINIA URIB ROJO,

        Plaintiff,

    v.

LAKEVIEW SECURITY & INVESTIGATIONS, INC., ANTHONY D'GRACIA, and ERIC SCOTT,

        Defendants.

Case No.: 1:24-cv-05729

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**

---

## PRELIMINARY STATEMENT

Plaintiff YESINIA URIB ROJO ("Plaintiff") respectfully submit this Memorandum of Law in Support of her Motion for Default Judgment against Defendants LAKEVIEW SECURITY & INVESTIGATIONS, INC., ANTHONY D'GRACIA, and ERIC SCOTT ("Defendants"), and for a judgment in favor of Plaintiff.

On July 29, 2024, Plaintiff initiated this action by filing the Summons and Complaint alleging claims of:

a) Unpaid overtime premiums, unpaid overtime wages due to time-shaving, liquidated damages for unpaid overtime, and attorneys' fees and costs arising under the Fair Labor Standards Act, as amended, 29 U.S.C. §§201 *et. seq.* ("FLSA")

b) Unpaid overtime premiums, unpaid overtime wages due to time-shaving, liquidated damages for unpaid overtime, statutory penalties for WTPA violations, and attorneys' fees and costs arising under the New York Labor Law ("NYLL").

c) Back wages, punitive damages, compensatory damages, and attorneys' fees and costs arising under the New York State Human Rights Law, N.Y Exec. Law §290 *et seq.*

1

("NYSHRL") and the New York City Human Rights Law, N.Y.C. Admin. Code§ 8-101 *et seq.* ("NYCHRL") due to Defendants' unlawful discrimination against Plaintiff due to Plaintiff's sex, weight, and appearance.

Defendants LAKEVIEW SECURITY & INVESTIGATIONS, INC., ANTHONY D'GRACIA, and ERIC SCOTT were previously represented by counsel and proceeding with the case, however, Defendants' former counsel's withdrawal was granted on March 10, 2025. Defendants have since failed to obtain new counsel, have neglected to proceed with the case, and have failed to comply with multiple Court Orders, and are in default. Plaintiff now submits this Memorandum of Law in support of Plaintiff's Motion for Default Judgment against Defendants.

## STATEMENT OF FACTS

A detailed description of the pertinent facts of this matter is set forth in the attached Affirmation of C.K. Lee, Esq. in Support of Plaintiff's Motion for Default Judgment (Dkt. No. 73) ("Lee Aff.").

## STANDARD OF REVIEW

The Second Circuit observes the following procedures regarding default judgments:

> Rule 55 of the Federal Rule of Civil Procedure provides a two-step process for obtaining a default judgment. The first step is to obtain a default. When a party against whom affirmative relief is sought has failed to plead or otherwise defend, a plaintiff may bring that fact to the court's attention, and Rule 55(a) empowers the clerk of the court to enter a default against a party that has not appeared or defended. Having obtained a default, a plaintiff must next seek a judgment by default under Rule 55(b) . . . . "In all other cases," Rule 55(b)(2) governs, and it requires a party seeking a judgment by default to apply to the court for entry of a default judgment. *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005).

Local Civil Rule 55.2 provides an analogous two-step process to obtain a default judgment against a party who has failed to answer, or otherwise respond to a complaint.

Local Civil Rule 55.2 (c) provides that, "unless otherwise ordered by the Court," once the party has applied to the Court, "all papers submitted to the Court pursuant to Loc. Civ. R 55.2 (a) or 55.2 (b) [above] shall be simultaneously mailed to the party against whom a default judgment is sought at the last known residence of such party (if an individual) or the last known business address of such party (if a person other than an individual)." "In deciding whether a default judgment should be entered, a court may accept all well-pleaded allegations in the unanswered complaint as true but must still satisfy itself that the plaintiff has established a sound legal basis upon which liability may be imposed." *Santillan v. Henao*, 822 F.Supp.2d 284, 290 (E.D.N.Y. 2011), citing *Au Bon Pain Corp. v. Artec, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981).

## ARGUMENT

I. **DEFENDANTS ARE LIABLE UNDER THE FAIR LABOR STANDARDS ACT AND THE NEW YORK LABOR LAW BECAUSE PLAINTIFF IS A COVERED EMPLOYEE**

   A. **Plaintiff Was Employed by Defendants' Enterprise Engaged in Interstate Commerce and/or the Production of Goods for Interstate Commerce**

An employee may make a claim under the Fair Labor Standards Act (FLSA) and the New York Labor Law (NYLL) once he has established himself as a *covered employee*. Covered employees are those "(1) who are personally 'engaged in [interstate] commerce or in the production of goods for [interstate] commerce,' (so-called 'individual coverage') or (2) who are 'employed in an *enterprise* engaged in [interstate] commerce or in the production of goods for [interstate] commerce,' (so-called 'enterprise coverage')." *Shim v. Millenium Group,* No. 08-CV-4022, 2009 WL 211367, at *2 (E.D.N.Y. Jan. 28, 2009).

Plaintiff qualifies as a covered employee because Defendants' enterprise engaged in interstate commerce. 'l[L]ocal business activities fall within the reach of the FLSA when an enterprise employs workers who handle goods or materials that have moved or been produced in

3

interstate commerce,' *Archie v. Grand Cent. P'ship, Inc.*, 997 F.Supp. 504, 530 (S.D.N.Y. 1998), This standard is met if Plaintiff merely handled supplies or equipment that originated out of state. Other cases discussing this element in an FLSA context have held that it is logical to conclude that janitorial/cleaning supplies have moved in interstate commerce." *Rodriguez v. Almighty Cleaning, Inc.,* 784 F.Supp.2d 114, 121 (E.D.N.Y. 2011), citing *Locke v. St. Augustines' Episcopal Church*, 690 F.Supp.2d 77, 88 (E.D.N.Y. 2010). This liberal requirement means that "virtually every enterprise in the nation doing the requisite dollar volume of business is covered by the FLSA." *Archie*, 997 F. Supp. at 530 (quoting *Dunlop v. Industrial Am. Corp.*, 516 F.2d 498, 501-02 (5th Cir. 1975)).

Furthermore, Defendants operate a security and investigation firm which provides services for businesses, individuals, and law offices in 6 states (such services include, but are not limited to, uniformed guard services, private investigation services, and special event / VIP security) and is purported to have gross annual revenues in excess of $500,000. *See* Complaint ¶¶ 5, 7, 71). Defendants' employee base includes security guards and patrol drivers (*see* Complaint ¶ 6). In *Huerta v. Victoria Bakery*, where the plaintiffs alleged they were bread-makers in a Brooklyn-based bakery with over half a million dollars in annual sales, the Court concluded that it would be "inconceivable that some of the bread-making materials used by plaintiffs did not originate […] outside the State of New York." *Huerta v. Victoria Bakery*, No. 10CV4754 (RJD)(JO), 2012 U.S. Dist. LEXIS 46407 (E.D.N.Y. Mar. 30, 2012). In this case, it would be equally, if not more, inconceivable that materials, tools, vehicles, equipment, and supplies (particularly radios, communication devices, surveillance equipment, monitoring equipment, defensive equipment, restraints, batons, weapons, flashlights, and protective gear) used by

4

Plaintiff, a security guard working in and around New York City, did not originate outside of the State of New York.

Due to the foregoing, at all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff is a covered individual within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

### B. Defendants' Annual Gross Volume of Business Amounts to at Least $500,000 for the Relevant Period.

To be held liable under the "enterprise coverage" theory of the FLSA, an employer must have at least five hundred thousand dollars ($500,000) in annual gross volume of sales made or business done. *See* 29 U.S.C. § 203 (s)(1)(A).

Courts have held that a plaintiff's allegations that a defendant meets the required element of annual gross volume of business is by itself sufficient to constitute an adequate pleading of the element. *See Rodriguez* at 121. *See also Marine v. Vieja Quisqueya Restaurant Corp.,* No. 20 CV 4671 (PKC) (RML), 2022 WL 17820084, at *3 (E.D.N.Y. Sept. 8, 2022) (holding enterprise coverage existed and following a line of cases that adopted the approach that plaintiff may allege that a restaurant has annual gross revenues of at least $500,000 without more as it is inferred from the type of business enterprise that the interstate commerce and requisite dollar amount prongs were met); *Jian Guo Yang v. Zhou's Yummy Rest., Inc.*, 2023 WL 2347885, at *5 (E.D.N.Y. Mar. 3, 2023) (finding that plaintiff, a cook in defendant's restaurant, sufficiently proved the second prong of enterprise coverage by merely asserting that "[defendant's restaurant] has gross sales in excess of five hundred thousand dollars ($500,000) per year"). Here, Plaintiff alleged in his Complaint that, upon information and belief, at all relevant times Defendants' enterprise had gross annual revenues in excess of $500,000 which may be inferred by the fact

that Defendants' security firm provides private security across 6 states (California, Florida, Nevada, New York, Texas, and Washington) (*see* Complaint ¶ 5, 7, 71).

### C. Defendants Committed Willful Violations of the FLSA and the NYLL

#### (i) *Defendants Violated the FLSA and NYLL by Failing to Pay Overtime Premiums to Plaintiff*

The FLSA and NYLL provides that employers are required to pay employees one-and-one-half times their regular rates for each hour worked over forty (40) hours in a week. 29 U.S.C. § 207(a)(1); 12 N.Y.C.R.R. § 142-2.2.

Throughout Plaintiff's employment, Plaintiff was required by Defendants to work up to 60 hours per week (*see* Lee Aff. ¶ 13; Complaint ¶ 34). However, despite requiring Plaintiff to work this many hours, Defendants paid Plaintiff at a straight rate and compensated all of Plaintiff's overtime hours at the same payrate as Plaintiff's regular hours (*see* Lee Aff. ¶ 15; Complaint ¶ 36; **Exhibit E to the Complaint**).

Defendants' willfulness here is evident by the fact that Defendants (1) required Plaintiff to work up to 20 overtime hours each week, (2) set Plaintiff's overtime payrates to the same rates as Plaintiff's regular hourly payrates and failed to provide a separate overtime rate for any hours Plaintiff worked over 40 per week, and (3) compensated Plaintiff's overtime hours worked at Plaintiff's prevailing regular rate.

#### (ii) *Defendants Violated the FLSA and NYLL by Failing to Compensate Plaintiff for 8 Hours of Work each Week*

The FLSA and NYLL provides that employers are required to pay their employees for all hours worked. *See* 29 U.S.C. § 206(a); NYLL § 652.

Here, Defendants required Plaintiff to work eight (8) hours off-the-clock, in addition to her scheduled hours, to perform work outside of her position's usual duties. (*see* Lee Aff. ¶ 16; Complaint ¶ 37). During these 8 hours, Defendants required Plaintiff to remain available for communication in order to respond to calls, texts and emails regarding scheduling of herself and others, as well as answering all inquiries from Plaintiff's management and co-workers (*id.*). Many of these messages were directly from Individual Defendants ERIC SCOTT and ANTHONY D'GRACIA (*id.*). Plaintiff was directly mandated by Individual Defendant ANTHONY D'GRACIA to respond to him and any other employee "at any given time" (*id.*). Therefore, Plaintiff was forced to work eight hours off-the-clock each week, which Defendants failed to compensate Plaintiff for. (*id.*)

Defendants' willfulness here is evident by the fact that Defendants required Plaintiff to perform duties outside of her position, for 8 hours each week in addition to her already scheduled hours and failed to provide Plaintiff with any compensation for this work (*id.*).

> (iii) <u>Defendants Violated the NYLL by Failing to Comply with the Requirements of the WTPA</u>

The WTPA – incorporated into the NYLL – requires that employers provide employees with (i) wage statements (which state regular and overtime rates of pay, regular and overtime hours worked, gross wages, deductions, allowances, and net wages) and (ii) wage notices at employees' dates of hiring and annually thereafter. *See* NYLL §§ 193, 195.

Here, Defendants never provided Plaintiff with any wage notices throughout her employment (*see* Lee Aff. ¶ 17; Complaint ¶ 38). Defendants also provided Plaintiff with fraudulent wage statements which failed to accurately reflect the actual amount of weekly hours Plaintiff worked and also failed to contain information required by the WTPA, such as Plaintiff's proper regular and overtime payrates (*see* Lee Aff. ¶ 17; Complaint ¶¶ 38-39).

7

Defendants' willfulness here is undisputable, due to the fact that Defendants completely failed to provide Plaintiff with any wage notices or accurate wage statements with any of the weekly payments made to Plaintiff.

> (iv) *Defendants Admitted to Injuring Plaintiff by Defaulting on Plaintiff's Claims*

"A default also effectively constitutes an admission that damages were proximately caused by the defaulting party's conduct; that is, the acts pleaded in a complaint violated the laws upon which a claim is based and caused injuries as alleged." *Santillan* at 290 (E.D.N.Y. 2011), citing *Greyhound Exhibition Group, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 159 (2d Cir. 1992). Plaintiff alleges Defendants' violations with specificity, and Defendants intentionally failed to defend themselves against these allegations.

II. **DEFENDANTS ARE LIABLE UNDER THE NYSHRL AND THE NYCHRL BECAUSE DEFENDANTS ARE COVERED EMPLOYERS WHO DISCRIMINATED AGAINST PLAINTIFF DUE TO HER PROTECTED STATUS**

The NYCHRL and NYSHRL both provide that it is unlawful for employers to discriminate against an employee based on the employee's race in terms, conditions, or privileges of employment. *See* New York City Administrative Code §8-107; New York State Executive Law § 292.

The NYSHRL defines employers as "all employers within the state." New York State Executive Law § 292. As noted above, Defendants are employers within New York State. The NYCHRL defines "employers" - in relation to Plaintiff's claims - as any employer with four or more employees. New York City Administrative Code §8-102. Here, as detailed above, Defendants operate a private security and investigations firm which provides private security services and private investigations services throughout New York State and 5 other states, and is

8

purported to generate over $500,000 per year. There is no doubt that Defendants' ability to operate such an enterprise would require greater than merely 4 employees.

Plaintiff states that throughout her employment, she was subjected to a hostile work environment due to constant discrimination and harassment based on her sex/gender and weight/appearance. Specifically, the Defendants unfairly limited Plaintiff's job assignments to lower-paying jobs which paid around $25.00 to $27.00 per hour, and assigned male guards, including those with less tenure than Plaintiff, to higher paying jobs which paid approximately $40.00 per hour (*see* Lee Aff. ¶ 20; Compl. ¶ 64). Additionally, throughout Plaintiff's employment, Plaintiff made numerous requests for reassignment to higher paying jobs to her managers and supervisors as well as directly to Individual Defendant ANTHONY D'GRACIA (*see* Lee Aff. ¶ 21; Compl. ¶ 65). Eventually, sometime in 2024, Plaintiff made another request for reassignment to a higher paying job site directly to Individual Defendant ANTHONY D'GRACIA, to which he told Plaintiff that those job sites "don't want fat, short females" (*id.*).

As a direct result of Defendants' promotion discrimination, Plaintiff suffered from a loss of potential earnings of up to $15.00 per hour ($40.00 - $25.00) for all hours Plaintiff worked over multiple years of employment. Plaintiff additionally suffered physical discomfort and emotional humiliation as a direct result of Defendants' gender and weight discriminating conduct.

Defendants' willfulness behind their discriminatory conduct became evident when Individual Defendant ANTHONY D'GRACIA admitted to Plaintiff that Defendants' absence of employer-initiated assignment to higher-paying jobsites for Plaintiff and denial of Plaintiff's attempts for employee-initiated assignment to higher-paying jobsites were directly and actually based upon Plaintiff's gender and weight.

9

### III. PLAINTIFF SATISFIED THE PREREQUISITES FOR AN ENTRY OF DEFAULT AND DEFENDANTS CANNOT SHOW GOOD CAUSE AGAINST A DEFAULT JUDGMENT

#### A. Plaintiff Obtained a Certificate Notation of Default

Federal Rule of Civil Procedure 55(a) provides that, "When a party against whom a judgment or affirmative relief is sought has failed to plead or otherwise defend . . . and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default." *Rodriguez* at 123.

On June 20, 2025, the Clerk entered default against Defendants LAKEVIEW SECURITY & INVESTIGATIONS, INC., ANTHONY D'GRACIA, and ERIC SCOTT in this action (*see* **Exhibit D to the Lee Aff.**).

#### B. Defendants' Conduct Upon Receiving the Court's Orders Indicates a Willful Default

"The willfulness standard encompasses conduct that is deliberate, or egregious or is carried out in bad faith." *Hernandez v. La Cazuela de Mari Restaurant*, 538 F.Supp.2d 528, 531 (E.D.N.Y. 2007). Further, the Court noted, in the context of vacating a default judgment, that a decision to vacate based on defendants "strategic decision to default" was inappropriate, particularly when plaintiff personally served them. *Id*.

Here, as factually described above, the Court served Defendants with an Order dated March 10, 2025 directing them to obtain new counsel by June 13, 2025 (*see* Lee Aff. ¶¶ 6-7; *see also* **Exhibit B to the Lee Aff.**).

Additionally, on July 3, 2025, Plaintiff confirmed that Individual Defendants were not serving in the military at any time between the filing of the Complaint and their default (*see* Lee Aff. ¶ 11; *see also* **Exhibit E to the Lee Aff.**).

Defendants were aware of this civil action, their requirements to obtain new counsel and the nature of the claims against them. Despite this, Defendants intentionally chose to neglect their obligations, despite being so Ordered by the Court.

### C. Defendants Do Not Have a Meritorious Defense to Plaintiff's Claims

In opposing a default judgment, a defendant must have a meritorious defense, one that is "good at law so as to give the factfinder some determination to make' … 'However, a defendant must 'present evidence of facts that if proven at trial, would constitute a complete defense.'" *Rodriguez*, at 124 (citing *American Alliance Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996)) and *SEC v. McNulty*, 137 F.3d 732, 740 (2d Cir. 1998).

Defendants have failed to articulate a *meritorious* defense in response to Plaintiff's claims of violations of the FLSA, the NYLL, the NYSHRL, and the NYCHRL. Although Defendants filed an Answer to Plaintiff's Complaint which denied Plaintiff's allegations, they did not provide any evidence to disprove Plaintiff's claims and instead relied entirely on blanket statements of denial. *See* Dkt. No. 21. Additionally, Plaintiff filed a Motion for Conditional Collective Certification which presented additional facts, evidence, and caselaw that supported Plaintiff's allegations (*see* Dkt. Nos. 25-30), which Defendants failed to oppose. As noted above, Defendants' failure to defend themselves or participate in the litigation is an admission as to the validity of the claims against them.

### D. Plaintiff has Complied with Servicemembers Civil Relief Act, 50a U.S.C. § 521

Pursuant to the Servicemembers Civil Relief Act, a plaintiff moving for default judgment is required to prove that a purportedly defaulting defendant is not actively serving in the military (*see* Servicemembers Civil Relief Act, 50a U.S.C. § 521).

11

On July 3, 2025, the Department of Defense reported that both Individual Defendants had not actively served in the military at any time between July 1, 2024 and July 3, 2025 (*see* Lee Aff. ¶ 11). Accordingly, the two Individual Defendants were not actively serving in the military at any time between the filing of the Complaint and the Clerk's entry of default against them. Proof of the Individual Defendants' military service status is attached as **Exhibit E to the Lee Aff.**

Due to the foregoing, Plaintiff has complied with Servicemembers Civil Relief Act, 50a U.S.C. § 521.

### E. Plaintiff Would Suffer Great Prejudice as a Result of the Denial of This Motion for Default Judgment

Denying a moving party's motion to enter a default judgment would be prejudicial to Plaintiff "as there are no additional steps available to secure relief in this Court." *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, No. 06 Civ. 14226, 2008 WL 5560868, at 2 (S.D.N.Y. Oct. 27, 2008), citing *Mason Tenders Dist. Council v. Duce Contr. Corp.*, 2003 WL 1960584, at 3 (S.D.N.Y. Apr. 25, 2003).

Plaintiff has taken all the required steps to exercise her rights under the FLSA, the NYLL, the NYSHRL, and the NYCHRL from the commencement of this action. By not entering a default judgment against all Defendants in this action, Plaintiff would be precluded from receiving her lawfully earned and unlawfully withheld compensation as well as damages for the discriminatory conduct committed against her – especially, given the fact that Defendants were participating in this suit at one point and then intentionally decided to stop defending themselves against Plaintiff's claims. Also, Defendants will still have the opportunity to oppose this motion once they receive notice of this motion, as required by Local Civil Rule 55.2(c).

## IV.   THE DAMAGES SOUGHT BY PLAINTIFF ARE APPROPRIATE GIVEN THE NATURE OF HIS CLAIMS

Pursuant to the FLSA, the NYLL, the NYSHRL, the NYCHRL, and New York common law, Plaintiff seeks recovery of (1) her unpaid wages and overtime premiums, (2) liquidated damages for unpaid wages and overtime, (3) statutory penalties for WTPA violations under the NYLL, and (4) punitive damages, compensatory damages, and back wages for Defendants' gender and weight discrimination.

### A.   Unpaid Wages and Overtime Premiums

The FLSA provides that "[a]ny employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be[.]" *See* 29 U.S.C. § 216(b).

The NYLL similarly allows for recovery of unpaid wages and overtime compensation. *See* NYLL § 198(1-a).

Plaintiff invokes her statutory rights to recover payment of her unpaid wages and overtime compensation.

### B.   Liquidated Damages for Unpaid Wages and Overtime

The FLSA and the NYLL provide for payment of liquidated damages for unpaid wages and overtime equal to the amount of unpaid compensation. *See* 29 U.S.C. §216(b); NYLL §663(1).

Plaintiff invokes her statutory rights to payment of liquidated damages in full.

### C. Statutory Penalties

The NYLL provides for payment of statutory penalties of (i) up to $5,000 for failure to provide wage notices, and (ii) up to $5,000 for failure to provide proper wage statements. NYLL § 198(1).

Plaintiff invokes his statutory right to payment of these statutory penalties in full.

### D. Damages for Discrimination

The NYSHRL provides for payment of compensatory damages, punitive damages, and back pay as a result of unlawful discriminatory practices. *See* New York State Executive Law § 297. The NYCHRL provides for payment of similar damages as a result of unlawful discriminatory practices. *See* New York City Administrative Code §§ 8-120, 8-502.

Plaintiff invokes her statutory right to recover payment of these compensatory damages, punitive damages, and back pay in full.

### E. The Validity of Plaintiff's Allegations Must be Presumed

While Plaintiff has the burden to prove her hours worked and the compensation she received, courts typically presume the validity of a plaintiff's allegations until they are disputed by the employer through the production of records. Also, "by defaulting, defendants have deprived the plaintiff of the necessary employee records required by the FLSA, thus hampering plaintiff's ability to prove his damages." *Santillan*, at 294. In the context of a defaulting defendant, "recollection and estimates of hours worked are presumed to be correct." *Id*.

Plaintiff has alleged her damages in detail and with specificity in her Complaint. Because Defendants have not properly disputed the validity of these damage calculations, the Court must take Plaintiff's well-pleaded allegations as correct.

## CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully request the Court enter a default judgment against Defendants LAKEVIEW SECURITY & INVESTIGATIONS, INC., ANTHONY D'GRACIA, and ERIC SCOTT.

Dated: July 14, 2025  　　　　　　　　　　　By:　  */s/ C.K. Lee*  
　　　　New York, New York 　　　　　　　　　　　　　C.K. Lee (CL 4086)

　　　　　　　　　　　　　　　　　　　　　　　　　**LEE LITIGATION GROUP, PLLC**  
　　　　　　　　　　　　　　　　　　　　　　　　　148 West 24th Street, 8th Floor  
　　　　　　　　　　　　　　　　　　　　　　　　　New York, NY 10011  
　　　　　　　　　　　　　　　　　　　　　　　　　Tel: (212) 661-1008  
　　　　　　　　　　　　　　　　　　　　　　　　　Fax: (212) 465-1181  
　　　　　　　　　　　　　　　　　　　　　　　　　Email: cklee@leelitigation.com

　　　　　　　　　　　　　　　　　　　　　　　　　*Attorney for Plaintiff*